IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RICHARD LYNN TAIT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11-1287-CV-W-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS**

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born in August 1957, has a tenth grade education with some vocational training. He alleges he became disabled on October 1, 2005, due to a combination of Crohn's disease, COPD, anxiety,

The Court's independent examination of the Record reveals that in early September 2005 Plaintiff was diagnosed as suffering from an esophageal ulcer. R. at 273, 277, 471-79. In a follow-up appointment in November 2005, Plaintiff was diagnosed as also suffering from reflux esophagitis and a hiatal hernia. R. at 271.

In October 2006, Plaintiff went to Neighborhood Family Care to establish care for nerves and stress; he saw Dr. Elaine Joslyn. She prescribed Xanax and Lexapro. R. at 506. Plaintiff saw (or called) Dr. Joslyn numerous times thereafter. Most of these contacts related to Plaintiff's anxiety, depression, and blood pressure. None of them

related to Crohn's disease. R. at 507-21.[1]

In February 2010, Plaintiff went to North Kansas City Hospital complaining of blood in his stool. R. at 264-67. Initial testing indicated Plaintiff suffered from Crohn's colitis. R. at 256, 261. In early March, Plaintiff told Dr. Joslyn about the Crohn's diagnosis but made no serious complaints about his condition. Dr. Joslyn also did not prescribe anything related to Crohn's disease. R. at 522. Plaintiff returned to North Kansas City Hospital for a regularly scheduled appointment on March 21, 2010, and reported that he had been "doing well until yesterday." The doctor described Plaintiff's Crohn's disease as fairly inactive, although Plaintiff was suffering from diverticulitis and for that reason was admitted for a few days. R. at 251-54. In mid-April 2010 Plaintiff was admitted for what was thought to be a flare-up of Crohn's disease. R. at 289-91. An upper GI and small bowel follow-through was "unremarkable," but a CT scan revealed sigmoid diverticulitis. R. at 324-26. These results ruled out Crohn's-related issues. R. at 308. In visits to Dr. Joslyn after the bout of diverticulitis Plaintiff reported that condition, but it does not appear she provided any treatment. However, it does appear that Plaintiff was using oxycontin more often than had been directed. R. at 525. In May, Plaintiff again reported using up to twice the directed dosage of oxycontin to deal with abdominal cramps. R. at 532-33.

In June 2010 Plaintiff saw a gastroenterologist – Dr. Joseph Eisenach, who was one of the doctors who saw Plaintiff at North Kansas City Hospital.[2] Dr. Eisenach wrote that he was seeing Plaintiff "for what we are presuming to be Crohn's disease." Plaintiff reported that his symptoms were "terrible," but those symptoms related to back pain that extended across the upper abdomen. Apart from this, Dr. Eisnach noted Plaintiff did not exhibit any of the usual symptoms of Crohn's disease and opined that the condition "appears to be in remission and in fact there is still some uncertainty about the

---

[1]Interestingly, in October 2007 Plaintiff asked for a medical excuse from jury duty. Plaintiff told Dr. Joslyn he was concerned the travel and walking would cause pain and his ankles to swell – but he did not express concerns related to Crohn's disease. R. at 512.

[2]It is not clear whether this visit was instigated by Dr. Joslyn or in connection with Plaintiff's treatment at North Kansas City Hospital. The latter seems more likely, but the answer to this question is irrelevant.

2

diagnosis" given that the "colonoscopy and small bowel series were entirely normal." Dr. Eisenach recommended tapering off prednisone and if symptoms recurred "a repeated imaging to evaluate for recurrent Crohn's will be performed so that this can documented in some fashion." R. at 535-36.

In July 2010, Dr. Joslyn noted that Plaintiff's pain was controlled and "Crohn's well-controlled." R. at 534. One year later – with no records from intervening visits – Dr. Joslyn wrote a note declaring Plaintiff suffers from "Crohn's Disease which has debilitating flare-ups in spite of medication" and "chronic generalized anxiety, which can cause him difficulty interacting with co-workers." R. at 227.

During the hearing, Plaintiff testified that when he was working he weighed around 190 to 200 pounds, but that he had actually gained weight while disabled and currently weighed more than 240 pounds. R. at 35. He last worked for a friend doing home improvement work in 2005, but he could no longer do the work because of his Crohn's disease. R. at 36-37. He testified that due to back pain he could not sit or stand for more than twenty minutes at a time and sometimes had to recline completely. He also testified that his "bathroom habits are quite frequent, very frequent," particularly with flare-ups of Crohn's or diverticulitis. R. at 40-41. Flare-ups occur once every two to three weeks and can last from three to five days. R. at 42. The back pain started shortly before he went to the hospital and was diagnosed with Crohn's disese in February 2010; he takes medication but it does not help completely and leaves him dizzy, wobbly and unstable. R. at 41. Plaintiff also testified that he suffers from depression and anxiety, and experiences panic attacks every other day. R. at 43.

The ALJ found Plaintiff had been diagnosed with Crohn's disease, gastr-reflux disease, COPD, and anxiety. However, she found Plaintiff's testimony regarding the intensity and limiting effects of those conditions during the time period in question was overstated. In reaching this conclusion, the ALJ noted the paucity of treatment between the alleged onset date in 2005 and the actual diagnosis of Crohn's disease in 2010. Indeed, nothing in the Record establishes Plaintiff *had* Crohn's disease before 2010 – and this is also the date Plaintiff alleges his back pain intensified. While Plaintiff's gastro-intestinal problems required hospitalization in 2010, they were resolved within a year. The ALJ also noted his Crohn's disease has been described by those treating the

3

condition as being in remission or, perhaps, to have never existed at all. R. at 9-11. The ALJ noted Dr. Joslyn's July 2011 note, but gave it little weight because it was inconsistent with her treatment notes. R. at 11. The ALJ found Plaintiff could perform light work with limitations on climbing, kneeling, or crawling, and with limitations on exposure to certain environmental conditions. R. at 9. Based on the testimony from a vocational expert, the ALJ concluded Plaintiff could return to his past relevant work as a telemarketer and could also perform other jobs in the national economy (such as cashier, sales attendant, folding machine operator, laminator, circuit board assembler, and document preparer). R. at 12-14.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

### A. Failure to Accord Controlling Weight to Dr. Joslyn's Opinion

Plaintiff first faults the ALJ for not deferring to Dr. Joslyn's July 2011 note and granting it controlling weight. Generally speaking, a treating physician's opinion is entitled to deference. This general rule is not ironclad; a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the

4

weight of the remaining evidence in the record.  E.g., E.g., Anderson v. Astrue, 696 F.3d 790, 793-094 (8th Cir. 2012); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996).  Here, there are a multitude of reasons why the ALJ did not err.  First, it is not even clear that Dr. Joslyn's note provides any opinions to which deference could be accorded.  She does not describe either of Plaintiff's conditions in terms that would suggest they are disabling.  She does not say how often Plaintiff suffers from flare-ups, which means there is no information that can be incorporated into an RFC.  The report about anxiety is similarly deficient.  Second, it is not clear that Dr. Joslyn can be deemed to be Plaintiff's treating doctor for Crohn's disease because she was not the doctor treating that condition.  "The treating physician rule is premised, at least in part, on the notion that the treating physician is usually more familiar with a claimant's medical condition than are other physicians."  Thomas v. Sullivan, 928 F.2d 255, 259 n.3 (8th Cir. 1991) (citation omitted).  Third, and most critically, Dr. Joslyn's two-sentence assessment is unsupported by medical evidence.  In fact, it is contradicted by medical evidence.  Dr. Joslyn's only prior mention of Plaintiff's Crohn's disease described the condition as "well-controlled."  Medical tests confirmed that Plaintiff's Crohn's disease was controlled.  Dr. Eisenach – a specialist in the field – even cast doubt on the existence of the condition.  With respect to Plaintiff's anxiety, Dr. Joslyn's contemporaneous treatment notes provide little support for her contention that Plaintiff may not be able to interact with co-workers.  Moreover, this assessment was contradicted by Plaintiff's own testimony; while he admitted he did not like crowds, he did not claim he had difficulty dealing with people.  R. at 51.  In this regard, the ALJ also noted Dr. Joslyn's failure to refer Plaintiff to specialist or suggest stronger measures for dealing with his conditions – factors the ALJ found weighed against her intimation that Plaintiff is limited in the manners she suggested.

### B.  The ALJ's Credibility Analysis

The familiar standard for analyzing a claimant's testimony is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

5

> While the claimant has the burden of proving that the
> disability results from a medically determinable physical or
> mental impairment, direct medical evidence of the cause and
> effect relationship between the impairment and the degree of
> claimant's subjective complaints need not be produced. The
> adjudicator may not disregard a claimant's subjective
> complaints solely because the objective medical evidence
> does not fully support them.
>
> The absence of an objective medical basis which supports
> the degree of severity of subjective complaints alleged is just
> one factor to be considered in evaluating the credibility of the
> testimony and complaints. The adjudicator must give full
> consideration to all of the evidence presented relating to
> subjective complaints, including the claimant's prior work
> record, and observations by third parties and treating and
> examining physicians relating to such matters as:
>
> >    1. The claimant's daily activities;
> >    2. the duration, frequency and intensity of the pain
> >    3. precipitating and aggravating factors;
> >    4. dosage, effectiveness and side effects of
> >    medication;
> >    5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's
> subjective complaints solely on the basis of personal
> observations. Subjective complaints may be discounted if
> there are inconsistencies in the evidence as a whole.

739 F.2d at 1322. While current regulations incorporate these considerations, the Eighth Circuit has declared that the "preferred practice" is to cite Polaski. Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007). Plaintiff faults the ALJ for focusing solely on the objective medical evidence. The Court interprets the Record differently. In addition to noting the lack of medical evidence, the Court noted inconsistencies between Plaintiff's testimony and that evidence, as well as the things Plaintiff said – and did not say – to his doctors.

The Court has already discussed the medical evidence. Plaintiff's Crohn's disease was diagnosed in 2010. This does not explain how Crohn's disease caused Plaintiff to be disabled five years earlier, particularly given that Plaintiff was not exhibiting or complaining about symptoms associated with Crohn's disease at that time.

6

Plaintiff's testimony contained complaints that are not reflected in any of his statements to doctors, which further undercuts his credibility.

Plaintiff also alleges the ALJ erred in discounting the letters Plaintiff submitted from friends and family members.  Like the ALJ, the Court sees no need to parse the specifics of these letters.  It is sufficient to note that while these letters are supportive of Plaintiff but do not really shed any light on Plaintiff's abilities after his alleged onset date.

### C.  Plaintiff's RFC

Plaintiff argues the ALJ arbitrarily established his RFC and the ultimate conclusion that Plaintiff could return to his work as a telemarketer is particularly erroneous because of his inability to work with members of the public.  This argument depends significantly on the success of the other arguments.  Absent some error in the ALJ's findings regarding the medical evidence and Plaintiff's credibility, there is no error in the findings regarding Plaintiff's RFC.  It is true the RFC does not incorporate Plaintiff's complaints, but it did not need to because the ALJ found those complaints were overstated.  The ALJ's findings were supported by substantial evidence in the Record as a whole.

### III.  CONCLUSION

The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

DATE: November 27, 2012

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT